**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

**Via ECF**                                                   August 20, 2021

The Honorable Mark J. Coulson
United States Magistrate Judge
U.S. District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

**Re: Addi, et al. v. Corvias Mgmt.-Army, LLC, et al., No. 19-cv-03253 (D. Md.)**

Dear Judge Coulson:

We provided Corvias with a detailed deficiency letter on August 4, and met and conferred by Zoom on August 18. While Corvias has agreed to provide some additional information and we have agreed not to pursue certain issues, we are at impasse and need the Court's assistance on several issues:

*1. Improper Claims of Privilege:* Corvias told Fort Meade residents that "independent" inspections for and remediations of mold would be performed on Fort Meade houses. Yet, Corvias has withheld over 800 communications between or among the vendors that did these inspections and remediations and Corvias. The vast majority of these withheld communications do not involve any attorneys, yet are withheld on "work product" grounds on the following generic description (or one very similar): "Confidential email correspondence discussing spreadsheet created by Holland & Knight and, at direction of counsel, populated by Holland & Knight-retained consultants re: assessment and/or remediation of suspected fungal growth (SFG), prepared in anticipation of litigation." Corvias has also sought to "clawback" 35 communications between or among vendors on similar grounds. All of these documents pertain to the remediation project—when were the houses remediated, what were the findings, etc. None should be withheld as work product. Indeed, Your Honor previously held that claims of work product protection cannot stand when the consultants are performing a public, fact gathering role. *See* ECF No. 104, at 2. Corvias, however, is not following Your Honor's prior ruling. Whether or not "Holland & Knight" created the template, the spreadsheet containing the results of the inspections and remediations—or responsive documents referencing those results—need to be produced, particularly as the results were reported not by attorneys, but by the vendors doing the inspections and performing the remediations.

*Solution:* Corvias needs to produce all withheld communications that do not include attorneys. Your Honor should review a sampling of communications involving attorneys to see if they support a claim of work product.

Corvias also takes the position that it is not required to identify any responsive Corvias documents withheld as privileged, based on a misreading of the ESI Protocol. To alleviate burdens, that protocol provides that the parties did not need to log communications solely between counsel and client *about the Litigation*. But discovery here predates this litigation by several years. If Corvias has responsive documents from that period withheld on the basis of privilege, it needs to log them.

**COVINGTON**

The Honorable Mark J. Coulson
August 20, 2021
Page 2

*2. Failure To Produce Budget-Related Documents:* Whether Corvias adequately budgeted for the maintenance needs of the houses at Fort Meade is highly relevant. We sought documents pertaining to the budgeting process. But Corvias has produced only the final "Army-approved" budget. Deposition testimony confirms that this budget does not emerge out of thin air: Rather, the budget is negotiated over many weeks and months with input from many stakeholders. Additionally, Corvias produced the budgets only in .pdf format, even though the native versions of the budgets must come from excel.[1]

*Solution:* Corvias should conduct a reasonable search for and produce documents related to the Fort Meade maintenance budget, including correspondence with Meade and/or the Army regarding forecasts for and setting of that budget, to include a targeted search of additional custodians if the existing custodians do not encompass these documents. Corvias should also produce native versions of the budgets.

*3. Failure To Produce Quarterly Performance Reports:* In multiple depositions, Corvias witnesses testified about quarterly meetings between "property management" and "ownership" that discussed, *inter alia*, housing and mold issues at Fort Meade. However, Corvias has produced almost no documents related to those meetings (*e.g.*, agendas, meeting presentations or "pre-reads," meeting minutes or follow-ups). These documents would obviously shed light on how Corvias was managing, thinking about, and responding to housing and mold issues.

*Solution:* Corvias should conduct a reasonable search for and produce documents related to quarterly meetings regarding Fort Meade housing, to include a targeted search of additional custodians if the existing custodians do not encompass these documents.

*4. Unprepared 30(b)(6) Witnesses:* Corvias's 30(b)(6) designee Holly Costello and Meade's 30(b)(6) designee Peter Sims were unprepared to answer questions related to the time period before they began working at Corvias (in 2019 and 2020, respectively) on multiple topics, including Corvias's mold and maintenance policies and procedures from 2016–present, budgets and projections for maintenance at Fort Meade, and maintenance, inspections, prevention, and remediation of mold at Fort Meade.[2]

Sims answered some variation of "I don't know" to more than forty substantive questions, and lacked knowledge of events prior to his joining Corvias. *See, e.g.*, Sims Tr. 202:9-14 ("Q. Do you know if there was a mold policy prior—prior to 2018? [...] A. I don't know"); 204:7-12 ("Q. Does Meade Communities know when mold and moisture was added to the maintenance manual? A. I—I don't know. Q. In 2016 was there a mold policy at Fort Meade? A I don't know. [...] I can't testify to what their specific mold policy was at that date"); 204:19–205:1 ("Q. So do you know what the protocol was in 2016 if Corvias Management received a report of a water leak? A. I don't know the details of the property management plans from 2016"); Sims Tr. 180:9–14 (unaware of reasons for increase in resident complaints because "I wasn't here then–and I didn't prepare for

---

[1] Corvias has not yet produced the budget from 2016; we believe that it agreed to do so on our meet-and-confer. Should that not be the case, we will need the Court's assistance.

[2] Other than a fifteen-minute conversation Sims had with his predecessor, the designees did not speak with anyone else at Corvias to prepare for their 30(b)(6) testimony. Neither brought any documents or prepared any notes regarding the designated topics.

**COVINGTON**

The Honorable Mark J. Coulson
August 20, 2021
Page 3

that with respect to this deposition"). Sims was also supposed to be the corporate designee for the post-wide mold remediation project that began in 2019—to include interactions with the vendors performing that work, but he disclaimed knowledge of or involvement in that project.

Similarly, Costello repeatedly testified that she did not know how things were done prior to her arrival. *See, e.g.*, Costello Tr. 104:3–7, 171:6–9, 172:15–20, 175:1–21; 178:19–22, 202:18–205:1, 205:19–206:2, 207:20–208:6, 209:4–7, 210:19–211:2 (topics involving maintenance budgets, staffing, and operations); 113:22–114:2 (staffing); 107:2–12, 108:17–109:8 (occupancy); 164:12–165:7 (marketing); 168:13–19, 169:5–6 (leasing); 235:7–236:2, 237:3–7, 237:18–21 (maintenance and mold policies and procedures).  As with Sims, Costello did not know (and apparently made no effort to prepare regarding) these topics for the timer period prior to her arrival. *See, e.g.*, Costello Tr. 104:7 ("I'm afraid I'm not able to–to provide a whole lot of insight to staffing levels prior to 2019 forward").

*Solution:*  Corvias and Meade properly prepare corporate-representative witness(es) to testify on these topics for the time periods prior to Costello's and Sims's arrival, respectively, as well as interactions with the mold remediation vendors. The time for these depositions should not count against Plaintiffs' currently allotted 75-hour total.

*5. Incentive Fees:* Corvias apparently earned incentive fees based on its performance, including metrics related to customer satisfaction, work order completion, and staying within its operating budget. These incentive fees are highly relevant to, inter alia, assessing both Corvias's performance and motivations for its action (or inaction) in relation to mold remediation and prevention at Fort Meade. We requested, but have not received, documents reflecting whether and in what timeframes Corvias received these incentives.

*Solution:*  Corvias should promptly produce the requested incentive fee information.

*6. Work Order Information:* Corvias maintains a database of information, known as "YARDI," regarding maintenance performed on homes. This includes fields identifying the technicians involved in the repairs and notes regarding those repairs. We requested a report of complete information (i.e., all available YARDI fields) for the homes in which Plaintiffs resided. Corvias has limited this production to only the time period from move-in to move-out. Of course, if the homes had experienced similar issues prior to move-in, or again after move-out, that would be relevant to whether Corvias was properly maintaining the homes. The burden on pulling this information from a database for a dozen homes is incredibly low.[3] We also requested that Corvias provide a listing of the descriptive fields that can be selected in YARDI, but Corvias has refused.

*Solution:* Corvias should provide the full YARDI information for the homes in which Plaintiffs resided while at Fort Meade, without date limitation. Corvias should also provide a list of the descriptive fields available for selection.

---

[3] Corvias has produced a database extract for "medium" and "high" mold homes, but in a format that does not identify what fields of information have been provided, rendering the extract unusable. We are following up to see if this issue can be resolved amicably, but otherwise will require the Court's assistance.

**COVINGTON**

The Honorable Mark J. Coulson
August 20, 2021
Page 4

*7. Additional TRC Documents.* Corvias's counsel was following up with TRC regarding certain documents identified during depositions of TRC's 30(b)(6) designees: (1) written protocols or materials related to how the Fort Meade inspections were to be conducted (*see* Howard Tr. 20:19–21:12, 52:3–17; Leonard Tr. 120:3–21:21); (2) a comprehensive data file containing the results from all inspections at Fort Meade (*see* Howard Tr. 59:14–60:16 ("[…] [A.] In our mobile data solutions platform, we're able to look at the project entire, all data collected. […] [Q.] There's no reason [that Excel/CSV file] couldn't be turned over? [A.] No."); and (3) any slide decks received from Corvias for mold training, or written correspondence or comments related thereto (*see, e.g.*, Leonard Tr. 61:13–67:13). The TRC designees also testified that TRC employees working on the project utilized TRC cellphones to do the work and communicate with one another. We have requested a search for responsive text messages from a subset of these personnel, which we understand Corvias's counsel (which also represents TRC) to have taken under advisement. Plaintiffs reserve their right to seek the Court's assistance if TRC refuses to produce this information.

We look forward to discussing these issues with Your Honor at the August 31 teleconference. We would also be happy to provide copies of the referenced deposition transcripts and privilege logs, whether by ECF or via e-mail to Chambers, as Your Honor prefers.

Respectfully submitted,

*/s/Kevin B. Collins*
Kevin B. Collins (D. Md. No. 13131)
Benjamin C. Block (D. Md. No. 15811)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
(202) 662-6291 (fax)

Counsel for Plaintiffs